IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES ARMSTEAD,

    Plaintiff,                    No. 2: 11-cv-1054 JAM KJN P

    vs.

TIM V. VIRGA, et al.,              ORDER AND

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' November 3, 2011 motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the undersigned recommends that defendants' motion be denied in part and granted in part, and granted with leave to amend in part.

II. <u>Legal Standard for Motion to Dismiss</u>

        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>,

1

551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

III. Plaintiff's Claims

This action is proceeding on the amended complaint filed June 28, 2011, as to defendants California State Prison-Sacramento ("CSP-Sac") Warden Virga, Captain Cannedy, Captain Mini, and Counselor Daly. (Dkt. No. 14.) Plaintiff, who is African American, alleges that he was subject to an improper eleven month race-based lockdown. Plaintiff alleges that the

lockdown was based on an incident between some African American and Southern Hispanic inmates. Plaintiff alleges that he, personally, had nothing to do with the incident. Plaintiff alleges that Southern Hispanic inmates were allies of the white inmates. Plaintiff alleges that during the lockdown, white inmate food service employees tampered with the food served to the African American inmates.

Plaintiff alleges that he wrote an administrative appeal addressed to defendant Virga regarding the race-based lockdown and food tampering. Plaintiff alleges that defendant Virga ignored his appeal. Plaintiff alleges that on December 15, 2010, defendant Cannedy interviewed plaintiff. During this interview, plaintiff told defendant Cannedy that the prolonged lockdown was creating a crisis. Plaintiff alleges that defendants Cannedy and Mini signed memorandums authorizing the race-based lockdown. Plaintiff also alleges that during the lockdown, defendant Mini improperly placed a limit on the amount of food items inmates on lockdown could purchase from the canteen. As a result of this limitation, plaintiff alleges that he was required to eat the food tampered with by the white inmates.

Plaintiff alleges that defendant Daly improperly denied his administrative appeal regarding the race-based lockdown because plaintiff failed to attach a memorandum to his grievance. Plaintiff alleges that he does not know to what memorandum defendant Daly was referring.

Plaintiff alleges that during the lockdown, he was denied access to the law library, a telephone, cleaning supplies for his cell and hair clippers.

IV. Discussion

    A. Exercise

Defendants construe plaintiff's amended complaint as raising a claim alleging denial of outdoor exercise during the lockdown. However, the amended complaint does not raise a claim alleging denial of outdoor exercise. In the amended complaint, plaintiff alleges, "[m]y issues mainly focused on: safety of the food being served, access to the law library, access to a

phone, access to needed cell cleaning supplies, access to some hairclippers . . . these were my primary issues, . . . not . . . walking the prison yard with the 'Southern Hispanics.'" (Dkt. No. 14 at 9.)

In the opposition to defendants' motion, plaintiff alleges that he was denied "regular yard exercise and . . . fresh air." (Dkt. No. 45 at 2.) Plaintiff is granted leave to file a second amended complaint raising a claim alleging denial of outdoor exercise during the lockdown. If plaintiff does not intend to raise such a claim, he shall not include it in any second amended complaint.[1]

### B. Race-Based Lockdowns in Violation of Equal Protection

Plaintiff alleges that he was subject to a race-based lockdown in violation of his right to Equal Protection. Defendants argue that they are entitled to qualified immunity with regard to plaintiff's Equal Protection claim.

*Qualified Immunity Standard*

"'Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Hunt v. County of Orange, 2012 WL 432297 at *7 (9th Cir. Feb. 13, 2012) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal alterations

---

[1] In the motion to dismiss, defendants argue that they are entitled to qualified immunity as to plaintiff's outdoor exercise claim. In Richardson v. Runnels, 594 F.3d 666 (9th Cir. 2010), the Ninth Circuit noted that "claims involving a prisoner's right to exercise require a full consideration of context, and thus a fully developed record." 594 F.3d at 672. Pursuant to Richardson, a claim by plaintiff alleging denial of the right to exercise during the lockdown would require a fully developed record in order for the court to consider the issue of qualified immunity, or at least a more fully developed pleading for the context of plaintiff's allegations regarding alleged denial of outdoor exercise.

4

omitted).

Although the court was once required to answer these questions in order, the United States Supreme Court has clarified that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001). Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 555 U.S. at 236–42.

In resolving the question of qualified immunity, the court views the facts in the light most favorable to the plaintiff. See Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2009).

*Equal Protection Standard*

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within prisons. See Johnson v. California, 543 U.S. 499, 505–06 (2005). A prison classification based on race is immediately suspect and is subject to the same strict scrutiny as a racial classification outside prison. See id. at 508–10. Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest. Id. at 510–11; Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010) (applying Johnson to racial lockdowns in response to prison disturbances).

////

Johnson did not rule out race-based classifications and did not eliminate prison security as a reason for such classifications, but instead determined that prison officials must demonstrate that race-based policies are narrowly tailored to address a compelling government interest such as prison security. See Johnson, 543 U.S. at 511–13, 515 (remanding case for determination of whether California Department of Corrections and Rehabilitation's policy of temporarily segregating inmates by race when they arrive in the prison system initially or are transferred to a new prison is narrowly tailored to serve a compelling state interest).

In Richardson, the inmate/plaintiff alleged that in several instances, assaults that were believed to be perpetrated by African American prisoners led to the lockdown of all African American inmates in a particular unit of the prison. 594 F.3d at 671. In Richardson, the Ninth Circuit held that under Johnson, defendants moving for summary judgment on a racial classification claim must show that "reasonable men and women could not differ regarding the necessity of a racial classification in response to prison disturbances and that the racial classification was the least restrictive alternative (i.e., that any race-based policies are narrowly tailored to legitimate prison goals);" and finding that defendants failed to carry this burden because they made no evidentiary showing at all concerning the basis for regarding all African American inmates as a security risk when one or a few African American inmates are responsible for an assault). Id. at 672.

*Did Defendants Violate Plaintiff's Right to Equal Protection?*

The undersigned first considers whether plaintiff's amended complaint states a claim for violation of the Equal Protection clause. Plaintiff alleges that all African American inmates were placed on lockdown based on an incident involving some African American inmates and some Southern Hispanic inmates. Plaintiff alleges that he had nothing to do with the incident on which the lockdown was based.

In the motion to dismiss, defendants request that the court take judicial notice of documents attached as exhibits to plaintiff's original complaint which they claim clarify his

claims. Defendants suggest that these exhibits undermine plaintiff's Equal Protection claim.[2]

In particular, defendants cite a memorandum signed by defendant Mini on January 19, 2010, stating that on Tuesday, January 19, 2010, "a Racial Riot occurred in B Facility Pedestrian Sallyport area between Black disruptive groups and Southern Hispanics, utilizing weapons resulting in two inmates being transported to an outside hospital." (Dkt. 1 at 44.) As a result, all general population inmates identified as Blacks and Southern Hispanics were placed on a modified program pending assessment and investigation. (Id.) The memorandum states that an assessment and investigation into the incident will determine the conclusion of the modified program. (Id.)

Defendants next cite a memorandum dated July 12, 2010, which contains no signature page. (Id. at 47-48.) This memorandum states that on January 19, 2010, all General Population inmates identified as Blacks, Southern Hispanics, Mexican Nationals, and their cellmates were placed on a modified program after the racial riot between the black disruptive groups and the Southern Hispanics. (Id. at 47.) The memorandum goes on to state that on June 14, 2010, a categorized release of three Mexican National inmates and three Black non-affiliated inmates to the main yard occurred. (Id.) The memorandum states that the three Mexican Nationals attacked the Black non-affiliated inmates using fists and a walking cane. (Id.) The memorandum states that based on this incident, all Mexican National inmates and Black non-affiliated inmates who were categorized for release were returned to the modified program with the Black Disruptive Groups and Southern Hispanics. (Id.)

The memorandum states that Central File reviews, searches and interviews had begun as of July 2010. (Id.) The Central File reviews were necessary to identify and categorize inmates who were the least likely to participate in violence, based on their case factors. (Id.) The searches and interviews were intended to prepare for a foreseen attempt to resume normal yard

---

[2] Court may take judicial notice of exhibits attached to the complaint. Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007).

7

program on Monday July 19, 2010, with another small group of categorized Black and Hispanic inmates. (Id.)

The memorandum states that on July 1, 2010, an incident occurred in B Facility involving two inmates identified as Asian/Others attacking another Asian/Other inmate with a weapon. (Id.) Based on the seriousness of the incident, all inmates identified as Asian/Other were placed on modified program. (Id.) All involved were removed from the Facility. (Id.) The searches and interviews were completed. (Id.) As of the date of the July 12, 2010 memorandum, all Asian/Other inmates were off the modified program. (Id.)

Defendants next cite a memorandum dated November 29, 2010, which contains no signature page. (Id. at 51-52.) This memorandum references the January 19, 2010 riot between Black disruptive groups and Southern Hispanics. (Id. at 51.) The memorandum references the June 14, 2010 attack by the Mexican National inmates on the non-affiliated Black inmates. (Id.) The memorandum goes on to state that on July 17, 2010, a Southern Hispanic inmate was released from his cell and attacked a Black inmate. (Id.)

The memorandum states that on July 21, 2010, during an effort to resume normal yard via a categorized release, a riot occurred amongst three Black inmates and two Hispanic inmates. (Id.) The memorandum also states that on August 17, 2010, during an effort to resume normal yard program via categorized release, a riot occurred amongst three Black and two Hispanic inmates. (Id.) The memorandum goes on to state,

> Thru reviews of current intelligence, interviews and an assessment of facts, the Facility is currently taking steps towards beginning normal programming. Administrative staff will continue to monitor the program and listed restrictions weekly. Effective Monday, November 22, 2010, all General Population inmates were placed on a Modified Program in preparation of Black and Hispanic inmates returning to normal program. As of November 29, 2010, searching was completed. On Tuesday, November 30, 2010, a select group of Black and Hispanic inmates will be released to the Main Yard to begin normal yard program. Following the successful programming of these inmates, more inmates will be reviewed by custody staff and added to releases. This process will be slow in process. All other Modified Program restrictions will continue to be in place.

(Id.)

The memorandum states that on November 19, 2010, an attempted murder occurred in Facility B on the Main Yard involving two White inmates attacking another White inmate. (Id.)

The exhibits cited by defendants do not undermine plaintiff's Equal Protection claim. Rather, the exhibits raise more questions regarding the lockdown. These exhibits do not address why all African American inmates were placed on lockdown after an unidentified number of "Black disruptive group" inmates were involved in a racial riot with Southern Hispanics. These exhibits do not address when the assessment and investigation, referred to in the January 19, 2010 memorandum, occurred. These exhibits also do not address the results of the assessment and investigation. The undersigned also notes that Hispanic inmates attacked the non-affiliated African American inmates released on categorized releases on June 14, 2010. If the non-affiliated African American inmates were not the instigators, it is unclear why they remained on lockdown. The memorandums also do not state whether the African American inmates involved in the July 21, 2010, and August 17, 2010 "riots" were non-affiliated or affiliated with disruptive groups.

In the motion to dismiss, defendants suggest that the record indicates that efforts were made to release the African American inmates from lockdown, but each attempt was met with renewed violence. Defendants suggest that these efforts undermine plaintiff's Equal Protection claim. While the exhibits indicate that prison officials made attempts to release African American inmates from the lockdown, it is unclear why prison officials did not release the African American inmates not involved in the January 19, 2010 incident sooner. As noted above, the record contains no evidence regarding the results of the investigation and assessment ordered after the January 19, 2010 incident referenced by defendant Mini in the January 19, 2010 memorandum. Further development of the record is required in order for the undersigned to evaluate any claim for qualified immunity by defendants based on their efforts to release plaintiff from lockdown after his initial placement.

9

Plaintiff's allegations in the amended complaint regarding being subject to an eleven month race-based lockdown state a colorable Equal Protection claim. The exhibits discussed above do not undermine this claim.

*Were Plaintiff's Rights Clearly Established?*

In the motion to dismiss, defendants argue that plaintiff's Equal Protection rights were not clearly established because, given the absence of law defining strict scrutiny, no reasonable officer would have known that placing plaintiff on lockdown or modified program because of his *perceived affiliation* with Black inmates violated the Equal Protection clause.

In particular, defendants argue that the Supreme Court in Johnson did not decide that the race-based policy violated Equal Protection, but instead remanded the issue to the Ninth Circuit to apply the correct strict scrutiny standard of review. Defendants argue that no published opinion since Johnson has clarified under what circumstances a race-based or ethnicity based action taken in response to a racial disturbance would be considered narrowly tailored to withstand strict scrutiny. Defendants argue that given the absence of law defining the application of "strict scrutiny" in a lockdown situation, it would not have been clear to defendants that placing plaintiff on lockdown violated the Equal Protection clause.

As stated above, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" In Richardson, the Ninth Circuit made clear that placing an African American inmate on lockdown based simply on the belief that they may be linked to violence by other African American inmates, with no evidentiary basis, violated Equal Protection:

> We are now addressing only the constitutional issue as no qualified immunity question is before us, so the Supreme Court's 2005 Johnson decision is the relevant question. We note that even under the weaker standard, which may govern the qualified immunity analysis, the assertion that it was sufficient for prison officials simply to believe there to be a link between an individual incident perpetrated by one or two inmates, and the risk of violence from all the African American prisoners in Facility D, with no evidentiary basis whatsoever for that

10

belief, falls short.

594 F.3d at 671.

In the instant case, defendants argue that based on the absence of case law defining the application of strict scrutiny, no reasonable officer would know that placing plaintiff on lockdown or modified program based on his *perceived affiliation* with the Black disruptive group inmates violated the Equal Protection clause. In the quote immediately above, the Ninth Circuit in Richardson rejected this argument. In Richardson, the Ninth Circuit made clear that placing an inmate on lockdown based on simply a belief that he is associated with violent inmates or, as defendants put it, a "perceived affiliation" with no evidentiary basis whatsoever, does not pass constitutional muster. Accordingly, the undersigned finds that a reasonable prison official would understand that placing plaintiff on lockdown or modified program based on their belief that he was somehow connected to the violent inmates, without any evidentiary basis, violated the constitution.

For the reasons discussed above, defendants are not entitled to qualified immunity as to plaintiff's Equal Protection claim. Defendants' motion to dismiss plaintiff's Equal Protection claim should be denied.

C. Access to Telephone

Plaintiff alleges that he was denied access to a telephone during the lockdown. Prison inmates retain a right, protected by the First Amendment, "to communicate with persons outside prison walls. Use of a telephone provides a means of exercising this right." Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002). The right may be restricted if the restriction is "'reasonably related to legitimate penological interests.'" Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1986).

In the motion to dismiss, defendants argue that plaintiff's access to the telephone was limited in order to promote prison security. Plaintiff is alleging that he was denied access to a telephone while being held on a lockdown that violated the Equal Protection clause. In other

words, plaintiff is alleging that defendants' denial of telephone access is not related to legitimate penological interests. If the lockdown violated the Equal Protection clause, then denying plaintiff use of a telephone would have had little to no penological interest. For these reasons, the undersigned finds that plaintiff has stated a colorable claim for violation of his right to telephone access. For these reasons, defendants' motion to dismiss plaintiff's claim alleging denial of the right to access a telephone should be denied.

### D. Access to Cleaning Supplies and Personal Hygiene Items

Plaintiff alleges that he was denied access to hair clippers during the lockdown.

Prisoners have a right to sanitation and personal hygiene products. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978).

Plaintiff's claim regarding the hair clippers is not clear. If plaintiff is alleging that he was not permitted to cut his hair for eleven months, the undersigned would find that he has stated a colorable Eighth Amendment claim. However, because plaintiff's intended use of the hair clippers is not clear, this claim is dismissed with leave amend. If plaintiff files a second amended complaint alleging that he was denied access to hair clippers, he must clarify how he intended to use the hair clippers, and for how long he was denied such access.

Plaintiff also alleges that he was denied cleaning supplies for his cell during the eleven months he was on lockdown. The undersigned finds that these allegations state a colorable Eighth Amendment claim. Accordingly, defendants' motion to dismiss plaintiff's claim regarding access to cleaning supplies should be denied.

### E. Food Tampering

Plaintiff alleges that white inmates tampered with his food, on behalf of the Southern Hispanic inmates, while he was on lockdown. Plaintiff alleges that white inmates placed "bodily extractions" and "other dangerous contaminants in the foods being served." (Dkt.

No. 14 at 6.)  In support of this claim, plaintiff alleges that "people were getting sick."  (Id. at 1.)

In the motion to dismiss, defendants contend that in his grievance regarding the lockdown, plaintiff did not mention food tampering.  (Dkt. No. 29-1 at 8.)  Defendants argue, "[h]ence, even assuming Armstead has stated sufficient facts, his food tampering claim would be barred by nonexhaustion."  (Id.)

Defendants' motion to dismiss is brought pursuant to Federal Rule of Civil Procedure (12)(b)(6) for failure to state a claim upon which relief may be granted.  Claims for failing to exhaust administrative remedies should be raised in non-enumerated motions pursuant to Federal Rule of Civil Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1109 (9th Cir. 2003).  The undersigned will not address defendants' argument that plaintiff's food tampering claim is not unexhausted because it is not properly raised in the instant motion and because it is so cursorily addressed.

Defendants argue that plaintiff's claim regarding food tampering should be dismissed as vague and conclusory.  The undersigned agrees that, as plead in the amended complaint, plaintiff's allegations regarding food tampering are vague and conclusory.  In the amended complaint, plaintiff does not describe how any of his own food was tampered with.  However, in his opposition to defendants' motion, plaintiff alleges that his food arrived smashed up, hot food was served cold and cold food was served hot, food was removed from his tray, and that he received an apple with a swastika carved in it.  (Dkt. No. 45 at 3.)  In his opposition, plaintiff further alleges that "this prison stopped allowing white inmates to serve food going to the Black inmates back in the 1990s for the same reason . . ."  (Id.)

Because plaintiff's opposition contains allegations that plaintiff's own food was tampered with, plaintiff's food tampering claim is dismissed with leave to amend.  If plaintiff files a second amended complaint alleging food tampering, plaintiff shall include allegations describing how his own food was allegedly tampered with.

////

F. Access to the Courts

Defendants move to dismiss plaintiff's claim alleging inadequate law library access while on the lockdown on grounds that he has not alleged any actual injury.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right of access to the courts is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. To bring a claim, a prisoner must have suffered an actual injury by being shut out of court. Lewis, 518 U.S. at 351.

In neither the amended complaint nor the opposition to defendants' motion to dismiss does plaintiff allege that he suffered any actual injury as a result of alleged inadequate law library access during the lockdown. In his opposition, plaintiff does not address defendants' argument that he has failed to allege an actual injury. Because it does not appear that plaintiff can cure this pleading defect, defendants' motion to dismiss plaintiff's claim alleging inadequate law library access should be granted. A second amended complaint may not include a claim regarding alleged inadequate law library access.

G. Grievances

Defendants move to dismiss plaintiff's claims alleging defendants violated his right to due process by failing to properly process his administrative appeals. There is no constitutional right to a prison administrative appeal or grievance system in California. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Because plaintiff has no due process right to a grievance system, defendants' motion to dismiss plaintiff's claim alleging violation of his right to due process in connection with the processing of his grievances should be granted. A second amended complaint may not include a claim regarding inadequate processing of his administrative appeals.

////

////

### H. Failure to Link

Finally, defendants argue that plaintiff does not allege that they were responsible for placing him on the lockdown.

*Legal Standard*

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where there is no evidence of personal participation). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board

15

of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). Some culpable action or inaction must be attributable to defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205.

*Defendant Virga*

In the amended complaint, plaintiff alleges that on August 16, 2010, he wrote a grievance addressed to defendant Warden Virga regarding the lockdown. (Dkt. No. 14 at 1.) Plaintiff alleges that defendant Virga ignored this appeal. (Id. at 1-2.) Plaintiff goes on to allege that defendant Warden Virga "facilitated" the "racially discriminatory lockdown." (Id. at 2.) Plaintiff alleges that it would be "far fetched" to believe that defendant Warden Virga was not responsible for the "prolonged racially discriminating" lockdown. (Id.)

Because defendant Virga was the Warden at the time of the lockdown, which affected all general population Black and Southern Hispanic inmates, plaintiff's allegation that he was responsible for "facilitating," which the court construes as implementing, the lockdown is not facially implausible. See Twombly, 550 U.S. at 570 (a claim upon which the court can grant relief must have facial plausibility). Accordingly, the undersigned finds that plaintiff has adequately linked defendant Warden Virga to his claim regarding the allegedly racially discriminatory lockdown. Defendants' motion to dismiss defendant Virga for plaintiff's failure to adequately link him to the alleged deprivations should be denied.

*Defendant Cannedy*

Plaintiff alleges that defendant Facility Captain Cannedy interviewed plaintiff on December 15, 2010. (Dkt. 14 at 2.) Plaintiff alleges that during this interview, he complained to

defendant Cannedy regarding the lockdown. (Id.) Plaintiff alleges that defendant Cannedy was "totally indifferent" to his complaints regarding the "cruel hardships" of the lockdown. (Id.) Plaintiff alleges that defendant Cannedy's name is on a memorandum dated May 23, 2011 which authorized the race-based lockdown. (Id.)

At the time of the December 15, 2010 interview, the lockdown was either over or close to over. There are no allegations in the amended complaint that defendant Cannedy was otherwise authorized to end the lockdown or involved in its implementation. For these reasons, the undersigned finds that plaintiff has not plead sufficient facts linking defendant Cannedy to the alleged deprivations. Because plaintiff has plead no facts linking defendant Cannedy to the alleged deprivations, the undersigned recommends that the motion to dismiss defendant Cannedy be granted.

*Defendant Mini*

Citing the memorandums authored by defendant Mini discussed above, plaintiff alleges that defendant Mini authorized the race-based lockdown. (Id. at 2.) Defendants argue that these memorandums only show that defendant Mini signed memorandums reporting to inmates and staff. Defendant Mini's authority to issue these memorandums, which informed inmates and staff of the lockdown as well as the conditions of inmates on lockdown confinement, sufficiently link defendant to the alleged deprivations. Based on these memorandums, plaintiff's claim that defendant Mini had authority over the lockdown and the conditions resulting from it is not facially implausible. Accordingly, defendants' motion to dismiss defendant Mini for plaintiff's failure to link him to the alleged deprivations should be denied.

*Defendant Daly*

Plaintiff alleges that on August 27, 2010, defendant Daly, a Correctional Counselor and the Appeals Coordinator, "shot down" his appeal regarding the lockdown. (Id. at 3.) In particular, plaintiff alleges that defendant Daly failed to process his appeal regarding the lockdown because plaintiff failed to attach a memorandum. (Id.) Plaintiff alleges that he does

not know to what memorandum defendant Daly referred. (Id.)

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). Because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal may be held liable under section 1983.

Here, plaintiff alleges that defendant Daly failed to process his grievance regarding the lockdown because plaintiff failed to attach a memorandum. Plaintiff does not allege that defendant Daly was responsible for the implementation of the lockdown or its conditions. Under these circumstances, the undersigned cannot find that defendant Daly is liable for the lockdown simply based on her alleged failure to process plaintiff's grievance which was not supported by adequate documentation. Accordingly, the motion to dismiss the claims against defendant Daly should be granted because it does appear that plaintiff can cure these pleading defects.

V. Conclusion

For the reasons discussed above, the undersigned recommends that defendants' motion to dismiss be denied as to plaintiff's claims alleging 1) racially-based lockdown in violation of the Equal Protection Clause; 2) denial of access to telephone; 3) denial of access to cleaning supplies; 4) claims against defendants Virga and Mini. If plaintiff does not file a second amended complaint and these findings and recommendations are adopted by the district court, this action will proceed on these claims against defendants Virga and Mini.

For the reasons discussed above, the undersigned recommends that defendants' motion to dismiss be granted as to plaintiff's claims alleging 1) inadequate law library access; 2) violation of due process in connection with the processing of administrative appeals; and 3) claims against defendants Daly and Cannedy. Plaintiff shall not include these claims in a second

amended complaint.

For the reasons discussed above, the following claims are dismissed with leave to file a second amended complaint: 1) denial of access to hair clippers; and 2) food tampering. If plaintiff files a second amended complaint, he must include all of his claims against all defendants. In other words, the second amended complaint must include his claims found colorable above against defendants Virga and Mini. Plaintiff's second amended complaint must contain a *short* and *plain* statement of the claims. If plaintiff does not file a second amended complaint, this action will proceed on those claims found colorable above against defendant Virga and Mini.

Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss (Dkt. No. 29) is granted with leave for plaintiff to amend as to the following claims: 1) denial of access to hair clippers; and 2) food tampering. Plaintiff's second amended complaint is due within fourteen days of the district court's adoption of these findings and recommendations; if plaintiff does not file a second amended complaint, this action will proceed on those claims found colorable above following the district court's adoption of these findings and recommendations; and defendants' response is due twenty-one days after the filing of a second amended complaint or the time to file such an amended complaint has expired.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (Dkt. No. 29) be granted as to the following claims: 1) inadequate law library access; 2) violation of due process in connection with the processing of administrative appeals; 3) claims against defendants Daly and Cannedy;

2. Defendants' motion to dismiss (Dkt. No. 29) be denied as to the following claims: 1) racially-based lockdown in violation of the Equal Protection Clause; 2) denial of access to telephone; 3) denial of access to cleaning supplies; 4) claims against defendants Virga and Mini.

////

1 | These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 2, 2012

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

arm1054.mtd